IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAPHNE JEANETTE ROST, EXECUTOR of the Estate of John H. Rebold, Deceased, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:19-CV-0607-RP |
| UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court are Plaintiff Daphne Jeanette Rost ("Rost"), Executor of the Estate of John H. Rebold ("Rebold"), Deceased's, Motion for Summary Judgment, (Pl.'s Mot. Summ. J., Dkt. 37), and the United States' Motion for Summary Judgment, (Def.'s Mot. Summ. J., Dkt. 38).[1] Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that the United States' Motion for Summary Judgment, (Def.'s Mot. Summ. J., Dkt. 38), should be **GRANTED** and that Rost's Motion for Summary Judgment, (Pl.'s Mot. Summ. J., Dkt. 37), should be **DENIED**.

**I. BACKGROUND**

This is a refund suit initially filed by Rebold, who died during its incipience and was replaced by his executor Rost, for the recovery of $596,830.00 in penalties and interest assessed against him by the Internal Revenue Service ("IRS") pursuant to 26 U.S.C. § 6677. The IRS assessed these penalties for failure to report transfers of money to and ownership of the Enelre Foundation ("the Foundation"), a foreign entity, for the years 2005-2011.[2] Specifically, Rebold failed to file Forms 3520 and 3520-A. The Foundation was formed under the laws of Liechtenstein as a *Stiftung*, which the IRS deemed a foreign trust, as a basis for the penalties.

---

[1] These motions were referred to Magistrate Judge Howell on August 18, 2021. That referral is now vacated.
[2] The IRS reduced the fines and penalties for some years. The penalties in issue in this case are for 2005-2007.

1

Rost moves for summary judgment, disputing whether the Foundation qualifies as a "foreign trust" for purposes of the section 6677 penalties. Rost argues that the IRS lacks authority to impose the penalty because no rule, regulation, statute or case states that a Liechtenstein *Stiftung* is a "foreign trust." Rost asserts that the United States' imposition of section 6677 penalties: 1) violates the United States' duty of clarity when imposing sanctions; 2) is the enforcement of an invalid rule not promulgated under the procedures required by the Administrative Procedure Act; and 3) is in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (Pl.'s Mot., Dkt. 37, at 4).

The United States, in turn, also moves for summary judgment asserting the Foundation qualifies as a "foreign trust" for purposes of federal taxation under the applicable federal law. Additionally, the United States contends that Rost's arguments, including her defenses, are without merit, and the penalties and interest imposed are proper. (Def.'s Mot., Dkt. 38).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Further, a court may not make credibility determinations or weigh

the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports her claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000).

In a tax refund suit such as this, the plaintiff "bears the burden of proving both the excessiveness of the tax assessment and the correct amount of any refund to which [she] is entitled." *Portillo v. Comm'r*, 932 F.2d 1128, 1133 (5th Cir.1991); *U.S. v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). It is the taxpayer's burden "to prove by a preponderance of the evidence that [her] position is correct." *Liberty Nat'l Life Ins. Co. v. United States*, 600 F.2d 1106, 1112 (5th Cir. 1979).

## III. DISCUSSION

### A. Relevant Statutory Scheme

In enacting 26 U.S.C. § 6048, Congress created disclosure requirements related to foreign trusts. Under §§ 6048(a) and (c), a United States person must report: (1) creation of a foreign trust; (2) transfers of money or property to a foreign trust; or (3) distributions received, directly or indirectly, from a foreign trust. Information about these events is generally filed on an IRS Form 3520. Failure to report these types of events on a Form 3520 can result in International Penalties of $10,000 or 35% of the value of the property involved in the unreported transfer or distribution, whichever is greater, as provided in 26 U.S.C. § 6677(a).

Section 6048(b) requires anyone who is treated as the owner of a foreign trust under the grantor trust rules of 26 U.S.C. §§ 671–679 (the "Grantor Trust Rules") to annually submit "such information as the Secretary may prescribe with respect to such trust for such year." Grantors of grantor trusts usually provide the information required under § 6048(b) on an IRS Form 3520–A. Failure to file a Form 3520–A can result in International Penalties of $10,000 or 5% of the gross value of the relevant trust's assets, whichever is greater, as provided in 26 U.S.C. § 6677(b).

### B. Undisputed Facts

Rebold was a United States citizen who worked as an oil executive in several overseas countries. In 2005, Rebold traveled to Switzerland and created the Foundation as a *Stiftung*, under the laws of Liechtenstein. (Foundation Formation Documents, Dkt. 38-10 & 38-18). In 2005 Rebold transferred $2,000,000 to the Foundation. (2005 Form 3520-A, Dkt. 38-12, at 7-9). In 2007, he transferred another $1,000,000 to the Foundation. (2007 Form 3520-A, Dkt. 38-14, at 5-7). Rebold did not disclose the transfers to, the creation of, or his ownership of, the Foundation on his 2005-2007 federal income tax returns. (Rebold's 2005-2007 Federal Income Tax Returns, Dkt. 38-16, 38-

4

17, and 38-18). Rebold also failed to file Forms 3520 and 3520-A disclosing to the IRS this same information about the Foundation for the relevant years. *Id.*

The IRS conducted an examination of Rebold's 2005-2007 tax years regarding his income tax liabilities, his penalties under 26 U.S.C § 6677(a) and (b) for failing to file reports of transfers to, and ownership in, a foreign trust, and his failure to file Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts" ("FBAR"), for certain foreign financial accounts. (Schulthess Letter to Rebold, Dkt. 38-19). On June 14, 2013, Rebold tardily filed Forms 3520 and 3520-A for his transfers to, and ownership in, the Foundation for 2005-2007. (2005 Forms 3520, 3520-A, Dkt. 38-12; 2007 Form 3520-A, Dkt. 38-14, at 5-7).

Based in part upon these late-filed information returns, in June 2014, the IRS assessed penalties under 26 U.S.C. §§ 6677 (a) for $700,000 for 2005 and $350,000 for 2007 and penalties under § 6677(b) for $84,013.80 for 2005, $90.393.65 for 2006, and $155,844.90 for 2007. (IRS Statement of Penalties, Dkt. 38-26). Rost asserts here that, as the executor of his estate, she is entitled to a refund of the penalties charged to Rebold. (Def.'s Statement of Facts, Dkt. 38-2).

### C.  The Parties' Motions

Both parties have moved for summary judgment with some issues overlapping and some not. The parties' arguments address the following issues: (1) whether the Foundation qualifies as a foreign trust for federal tax purposes; (2) whether the penalties violate the Due Process Clause; (3) whether the penalties should be excused for reasonable cause because of Rebold's lack of mental capacity; (4) whether the penalties assessed violate the Administrative Procedure Act; (5) whether the penalties violate the Excessive Fines Clause of the Eighth Amendment; and (6) whether the penalties assessed violate the "Duty of Clarity."

1. Motions to Strike

As an initial matter, in its Response in Opposition to Plaintiff's Motion for Summary Judgment, the United States objects to and moves to strike various exhibits and statements. In particular, Defendant United States takes issue with statements to the effect that the IRS adopted a "rule" that a *Stiftung* automatically qualifies as a foreign trust, relied upon by Rost in support of her Motion. (Def.'s Resp., Dkt. 41, at 2). The Court finds it unnecessary to strike Rost's exhibits, as they are not material to the Court's determination, and unnecessary to strike the IRS's statements, as the Court is capable of determining the legal issues in this case regardless of the parties' use of exhibits to frame those issues. In turn, Rost objects to the United States' reliance on a document outlining UBS client notes which purport to show Rebold's visit to Switzerland and decision to open a foundation there. (Client Notes, Dkt. 38-8). She claims this exhibit is without foundation and was not properly disclosed in the course of discovery. (Pl.'s Resp., Dkt. 42, at 8). The Court finds it need not rely on this document to resolve the parties' motions, and therefore any motion to strike is moot.

2. Whether the Foundation Qualifies as a "Foreign Trust" for Tax Purposes

The core issue in this case is whether the Foundation, a Liechtenstein *Stiftung*, qualifies as a foreign trust for tax purposes. (Def.'s Mot, Dkt. 38, at 5). The Internal Revenue Code ("IRC") includes criteria for classification of various organizations for federal tax purposes. Treas. Reg. § 301.7701–1. "Whether an organization is an entity separate from its owners for federal tax purposes is a matter of federal tax law and does not depend on whether the organization is recognized as an entity under local[3] law." *Id.* Treasury Regulation § 301.7701-7 provides the rules for determining

---

[3] The United States argues that while a *Stiftung* may not qualify as a foreign trust in certain circumstances, in this case it does. Notably, "[a] *Stiftung* is a creation of the laws of Liechtenstein or Switzerland resembling a trust, but not limited to specific lives in being. A *Stiftung* can own property and is controlled by an administrator (known as a *stiftungerat*) whose powers and duties are comparable to a trustee." *Kraus v. Comm'r*,

6

whether an entity is a trust under 26 U.S.C. § 7701(a)(30)(E) and (a)(31)(B). Treasury Regulation § 301.7701-4(a) outlines when an arrangement is treated as a trust for federal tax purposes. Generally, an arrangement will be treated as a trust under the IRC "if it can be shown that the purpose of the arrangement is to vest in trustees responsibility for the protection and conservation of property for beneficiaries who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint enterprise for the conduct of business for profit." Treas. Reg. §§ 301.7701–1 and 301.7701–4(a).

Following Treasury Regulation § 301.7701-4(a), courts apply the facts and circumstances test to determine whether an arrangement should be treated as a trust or a business entity. Courts look to see if such an arrangement includes: (1) the existence of associates; and (2) an objective to carry on a business and divide the gains therefrom (or a business purpose). *Elm Street Realty Trust v. Commissioner*, 76 T.C. 803, 818 (1981) (discussing Treas. Reg. § 301.7701-4(a) and prior case law in determining that a realty trust was not an association for federal tax purposes because the trust beneficiaries were not associates); *see also Morrissey v. Commissioner,* 296 U.S. 344, 347 (1935). The absence of either business attribute will cause an entity to be treated as a trust. *See Estate of Bedell Trust v. Commissioner*, 86 T.C. 1207, 1218 (1986); *Elm Street Realty Trust v. Commissioner*, 76 T.C. 803 (1981). For an arrangement to be classified as an association and not a trust for federal tax purposes the arrangement "must have been devised as a vehicle to carry on a business and divide the profits therefrom." *Howard v. United States*, 5 Cl. Ct. 334, 343-344 (1984), *aff'd* 170 F.2d 178 (Fed, Cir. 1985); 26 C.F.R. § 301.7701–4(a). For federal income tax purposes, a relationship generally is classified as a trust if it is "'clothed with the characteristics of a trust'—a standard that tends to be more inclusive than a technical trust under State law." *Johnson v. Commissioner,* 108 T.C. 448, 475 (1996), *aff'd in part*

---

59 T.C. 681, 685, 1973 WL 2582 (U.S. Tax Court, Feb. 22, 1973); *see also, Weizmann Institute of Science v. Neschis*, 229 F. Supp. 2d 234, 241 (S.D.N.Y. 2002).

7

*and rev'd in part on other grounds* by 184 F.3d 786 (8th Cir. 1999) (*quoting Hart v. Comm'r of Internal Revenue,* 54 F.2d 848, 851 (1st Cir. 1932)).

The United States asserts that applying the facts and circumstances test to determine whether an arrangement should be treated as a trust or a business entity, the Foundation qualifies as a trust. The Foundation's purpose as stated in its formation documents, the United States points out, is to defray the costs of education, support, training, and general maintenance of its beneficiaries, which are Rebold and his family. (Foundation Formation Documents, Dkt. 38-10 & 38-13). The Foundation does not involve business associates and is not a joint enterprise that conducts business. *Id.* Moreover, the Foundation's assets were settled by Rebold as a grantor, and the Foundation pays Trustee fees. *Id.* The Foundation does not provide for the allocation of profits of a business to its beneficiaries. *Id.* Most importantly, the Foundation's formation documents provide that it shall not engage in or conduct business in any commercial manner. *Id.* Therefore, the United States argues, the Foundation qualifies as a trust under United States law. (Def.'s Mot., Dkt. 38, at 8). The Court finds that applying the facts and circumstances test, and in light of the lack of any countervailing evidence from Rost, the Foundation qualifies as a trust.

Assuming the United States is correct that the Foundation is indeed a trust, the Court must next determine whether it is a "foreign trust" for federal tax purposes. Federal law defines a "foreign trust" to mean any trust other than a U.S. trust as defined in § 7701(a)(30)(E). 6 U.S.C. § 7701(a)(31)(B). Under 26 U.S.C. § 7701(a)(30)(E), a domestic trust for federal tax purposes is a trust meeting two tests: the court test and the control test. Under the court test, a court within the United States must be able to exercise primary supervision over the administration of the trust. 26 U.S.C. § 7701(a)(30(E)(i). The control test requires that one or more United States persons have authority to control all substantial decisions of the trust. 26 U.S.C. § 7701(a)(30)(E)(i).

The United States maintains that under the relevant statutory scheme, the Foundation qualifies as a foreign trust for federal tax purposes because it fails the court and control tests. Rost counters that fact issues exist as to whether the Foundation qualifies as a "foreign trust." However, Rost points to no fact issues regarding the Foundation's supporting documentation, nor the circumstances in which Rebold created or funded it. Rost has thus failed to carry her burden by submitting evidence to challenge the United States' contention that the trust is a foreign trust, or by demonstrating fact issues that would prevent the Court from determining that the Foundation is a "foreign trust" as a matter of law.

Instead, Rost argues that none of the relevant statutes, regulations, or cases cited by the United States specifically state that a *Stiftung* is a "foreign trust" for purposes of penalties under the IRC. (Pl.'s Resp., Dkt. 42, at 3). Rost disputes the United States' authority to impose the penalties in issue on this dubious basis. She expends considerable energy distinguishing cases cited by the United States as failing to state categorically that a *Stiftung* is always a foreign trust for purposes of tax penalties. However, a review of these cases shows that they generally support the Court's application of the facts and circumstances test to find that the Foundation is indeed a trust. The category of vehicle under which a financial entity is organized, whether *Stiftung* or something else, is unimportant for tax purposes. In issue is whether the Foundation, under the facts and circumstances in this case, qualifies as a trust rather than a corporation. Applying the facts and circumstances test, the Court finds it unquestionably does. Likewise, the Foundation fails the court and control tests, making it a "foreign trust."

Because the Foundation is a "foreign trust" for the purposes of federal taxes, and Rebold failed to properly report his transfers to and ownership of the Foundation, he is properly subject to civil penalties incurred pursuant to 26 U.S.C. §§ 6048 and 6677 for failure to file the required forms.

3. <u>Whether the Penalties Violate the Due Process Clause</u>

9

Rost further argues that imposition of penalties pursuant to § 6677 violates the Due Process Clause of the Fifth Amendment to the United States Constitution. Rost asserts that "the 6677 penalty assessments is merely the opinion of the IRS's revenue agents or perhaps IRS lawyers, set forth only in IRS correspondence to Mr. Rebold and not a clear, written rule of law." (Pl.'s Mot., Dkt. 37, at 17). Thus, Rost asserts, the penalties assessed based on an "unwritten law" deprived Rebold of his property without due process of law as prohibited by the Fifth Amendment. Rost's complaint centers on the notice requirement of due process.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstituriional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125-26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)); *Kovac v. Wray*, 363 F. Supp. 3d 721, 756 (N.D. Tex. 2019). Summary administrative procedures by the federal government to collect revenue do not offend rights to procedural due process. *See Phillips v. Commissioner*, 283 U.S. 589, 610 (1931). A taxpayer who wishes to contest her tax liability is provided by statute with two alternate procedures for doing so: (1) pay the amount imposed and file suit in federal district court for a refund; or (2) pay nothing and petition the tax court to redetermine the deficiency amount. *See Flora v. United States*, 362 U.S. 145, 175-77 (1960). These procedures provide sufficient opportunity to be heard and to contest an income tax assessment by the IRS. *See Schiff v. United States*, 919 F.2d 830, 832 (2d Cir.1990).

While Rost's argument focuses on improper notice, what she is really challenging is the United States' alleged failure to warn Rebold that the *Stiftung* might qualify as a "foreign trust," subject to various filing requirements, prior to his settling his assets in the entity. Rost frames this

10

argument as an unwritten rule: "the a-*Stiftung*-is-automatically-a-foreign-trust-for-penalty-purposes-correspondence rule." (Pl.'s Mot., Dkt. 37, at 18). Rost asserts that the only place this rule could be located is in correspondence to Rebold notifying him of the penalties owed.

Rost's framing of the issue is incorrect. The United States has not asserted a written or unwritten law that a *Stiftung* always qualifies as a foreign trust for federal tax purposes. Instead, in this case, applying federal tax law, the IRS assessed the facts and circumstances of the situation and determined the Foundation qualified as a "foreign trust." Rost does not challenge the statutes or regulations upon which the IRS based its assessment. *See* 26 U.S.C. §§ 7701(a)(30)(E) and (a)(31)(B), Treas. Reg. §§ 301.7701-4(a), 301.7701, IRS Notice 97-34. These statutes and regulations gave Rebold adequate notice of the relevant filing requirements for foreign trusts. Rebold's argument therefore fails.

Rost further contends that imposing § 6672 penalties on Rebold violates the Fifth Amendment under the void for vagueness doctrine. The void for vagueness doctrine "requires the invalidation of laws that are impermissibly vague." *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2015). A statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). However, "perfect clarity and precise guidance" are not required. *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). In this case, Rost argues that Rebold would not have known that the Foundation qualified as a "foreign trust" because a *Stiftung* was not expressly identified as such.

Section 6048 requires certain reporting requirements of foreign trusts, and § 6677 implements penalties for failure to abide by those reporting requirements. Rost's argument seems to be that the statute in issue is vague because it does not explicitly define a "foreign trust." However, IRC regulations state: "Generally speaking, an arrangement will be treated as a trust under the

[IRC] if it can be shown that the purpose of the arrangement is to vest in trustees responsibility for the protection and conservation of property for beneficiaries who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint enterprise for the conduct of business for profit." 26 C.F.R. § 301.7701-4(a). The IRC further defines a United States trust, in contrast to a "foreign trust." 26 U.S.C. § 7701(a)(30)(E); 26 U.S.C. § 7701(a)(31)(B). Rebold was a sophisticated businessman who had conducted business abroad for many years. He could not claim he, or any hired counselor or tax advisor, was unable to piece together the statutory framework such that he could not ascertain that the *Stiftung* in which he placed his money for his and his family's benefit would likely qualify as a foreign trust for United States tax purposes. A reasonable United States citizen placing his money abroad would have inquired and concluded as much, especially in light of the broad IRC definitions of "trust" and "foreign trust." Rost's argument, that the United States must somehow identify and list every entity which might qualify as a "foreign trust," is without merit. The statute in issue is not void for vagueness.

### 4. Rebold's Mental Capacity Defense

The United States moves for summary judgment on Rost's defense that Rebold lacked mental capacity when he failed to file the forms in issue, which Rost claims constitutes "reasonable cause" for the failure to file. Under § 6677, the penalties enumerated will not be imposed "on any failure which is shown to be due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6677(d). Reasonable cause is determined on a case-by-case basis, considering all the facts and circumstances. *Brinkley v. C.I.R.,* 808 F.3d 657, 668 (5th Cir. 2015). The "pertinent facts and circumstances" include "the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional." *Montgomery v. Comm'r*, 127 T.C. 43, 67 (2006). The taxpayer bears the burden of proof on a reasonable cause

12

defense. *Klamath Strategic Inv. Fund ex rel. St. Croix Ventures v. United States,* 568 F.3d 537, 548 (5th Cir. 2009) (citing *Montgomery*, 127 T.C. at 66).

To prevail on this defense, Rost must establish that Rebold's failure to file was due to reasonable cause. 26 U.S.C. § 6677(d). A court may find reasonable cause under the IRC if "a taxpayer convincingly demonstrates that a disability beyond his control rendered him unable to exercise ordinary business care." *Stine v. U.S.,* 106 Fed. Cl. 586, 591 (Fed. Cl. 2012) (quoting *In re Sanford*, 979 F.2d 1511, 1514 n. 8 (11th Cir.1992)). The "type of illness or debilitation that might create reasonable cause is one that because of severity or timing makes it virtually impossible for the taxpayer to comply—things like emergency hospitalization or other incapacity occurring around tax time." *Stine,* 106 Fed. Cl. at 592 (quoting *In re Carlson*, 126 F.3d 915, 923 (7th Cir.1997)). However, "[e]vidence that the taxpayer is able to conduct his or her business or financial affairs despite the illness shows that the illness is not severe enough to constitute reasonable cause." *Stine,* 106 Fed. Cl. At 592. For example, the Second Circuit found that evidence that a plaintiff "continued his non-securities employment and was actively engaged in securities and futures transactions during the relevant period" was sufficient to "undermine [his] claim that he was so incapacitated that he could not file [his] tax returns" *Marrin v. Comm'r*, 147 F.3d 147, 153 (2d Cir.1998).

The United States argues that Rost cannot establish reasonable cause based upon Rebold's alleged mental incompetence, claiming that Rebold was able to manage his personal affairs during the relevant time period of 2005-2008. The United States points out that in 2005, Rebold traveled to Switzerland and had the mental capacity to set up the Foundation. (Foundation Formation Documents, Dkt. 38-10 & 38-18). Further, the United States notes that in 2005 and 2007, Rebold was able to transfer significant funds to the Foundation, apparently on his own. (Rebold Bank Records Requesting Transfer, Dkt. 38-7 & 38-20). In 2007, Rebold had the mental capacity to close his personal UBS account, open a UBS account in the Foundation's name, and direct and transfer

13

funds from his personal account to the Foundation's account. *Id.* Moreover, on March 23, 2007, Rebold had the requisite capacity to sign and execute his will and appoint his daughter, Daphne Rost, as Executrix of the Estate. (Rebold Will, Dkt. 38-5). Rebold declared that he was of sound mind at the time he executed his will. *Id.* One the same date, he had sufficient mental capacity to sign and execute a Statutory Durable Power of Attorney. (Rebold Power of Attorney, Dkt. 38-12).

Rost asserts that the evidence supports her claim that Rebold was not mentally competent prior to 2010. She cites to evidence set forth in her deposition that her father had various cognitive issues. (Rost Depo., Dkt. 38-24, at 25, 33, 37, 61, 80, 90–91). Rost also relies on the deposition of her sister, Janis Rebold, (Rebold Depo., Dkt. 38-25, at 22), and on Rebold's erratic tax filings. (Rebold Tax Filings, Dkt. 42-1 through 8).

The Court finds that Rost has not raised a fact issue sufficient to avoid summary judgment on this issue. The majority of the evidence Rost cites relates to events that occurred after 2010, when the relevant time period regarding Rebold's failure to file was no later than 2008. Moreover, Rost's statement that Rebold was diagnosed with clinical depression after his wife died in 2002, (Rost Depo., Dkt. 38-24, at 82), is insufficient to establish that he was unable to manage his business affairs, which he clearly did after that time. In fact, Rebold timely filed his 2004-2006 FBARS, reporting those accounts with his signature on the 2006 FBAR dated in June 2007. (Rebold Filings, Dkt. 38-15 & 38-16). Rebold also timely filed his 2005 and 2006 federal taxes, with his signature on the 2006 return dated August 10, 2007. (Rebold Tax Filings, Dkt. 42-6 & 42-7). Lastly, in an email from his attorney dated December 2012, the attorney stated, "I believe I have related to you Mr. Rebold's mental state. While he does remember details from years ago, his short-term memory is not good. Otherwise he is in good health and is quite able to take care of himself." (Erwin Email, Dkt. 38-21). This final piece of evidence could potentially raise concerns related to capacity, but is dated in 2012, almost four years after the events at issue, and does not shed light on Rebold's mental state

at the relevant time. *See Klamath,* 568 F.3d at 548. Overall, the evidence does not paint a picture of an individual unable to care for his affairs during the period of time in which he set up and failed to report the Foundation.

The Court thus finds that Rost is unable to establish reasonable cause due to lack of mental capacity for Rebold's failure to file the required forms. The facts relied upon as summary judgment evidence show that Rebold was able to handle his business, personal, and even tax affairs during the relevant period. Rost cannot establish that Rebold was so mentally incompetent as to establish a fact issue regarding reasonable cause for his failure to file Form 3520 and Form 3520-A information returns. This argument therefore fails.

### 5. Administrative Procedure Act

Rost further argues that the penalties in issue are invalid because they were not imposed pursuant to a rule properly promulgated under the Administrative Procedure Act ("APA"). (Pl.'s Mot., Dkt. 37, at 11). Rost asserts that the "rule" on which the United States relies in assessing penalties on Rebold was embodied only in correspondence to Rebold. (December 5, 2013, IRS Correspondence to Rebold, Dkt. 37-2; November 17, 2014, IRS Final Notice and Intent to Levy to Rebold, Dkt. 37-3; December 15, 2014, IRS Final Notice and Intent to Levy to Rebold, Dkt. 37-4; October 14, 2014, IRS Final Notice and Intent to Levy to Rebold, Dkt. 37-5). Rost maintains that this "rule" was not promulgated pursuant to 5 U.S.C. § 553 of the APA.

The United States responds that the assessment of penalties via letter to Rebold (stating that the Foundation, although a *Stiftung,* qualifies as a "foreign trust") does not qualify as a "rule" subject to the APA's requirements of notice and comment. *See* 5 U.S.C. § 553. The Court agrees. Rost's argument is based on the faulty premise that the IRS established a "rule" that a *Stiftung* always

qualifies as a "foreign trust" merely by finding the Foundation to be a "foreign trust" here. There is no such rule, and so this argument fails.[4]

Moreover, the IRS's assessment of § 6677(a) and (b) penalties against Rebold were not in violation of the APA. The penalties were based upon law and regulation properly enacted and promulgated. Whether an entity or arrangement, including a *Stiftung*, is treated as a foreign trust for federal tax purposes is determined by review of its facts and circumstances in light of the relevant Department of the Treasury regulations and case law. *See* 26 U.S.C. §§ 7701(a)(30)(E) & (a)(31)(B); Treas. Reg. §§ 301.7701-4(a), 301.7701-7; and IRS Notice 97-34. Rost does not claim these laws violate the APA. Rost's APA argument fails on this additional basis.

6. Excessive Fines Under the Eighth Amendment

Rost argues that the penalties in issue violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. The United States moves for summary judgment on this issue arguing that remedial civil tax penalties are not fines subject to the dictates of the Eighth Amendment. *In re Wyly*, 553 B.R. at 603. Rost does not respond to this argument, stating "Plaintiff's response to this is subsumed by the due process argument." (Pl.'s Resp., Dkt. 42, at 12). Rost does address the argument elsewhere her briefing. Under Fifth Circuit law, "when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal[,]" and, "[b]y analogy, failure to brief an argument in the district court waives that argument in that court." *Adams v. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. of the U.S. and Canada, AFL-CIO, Local 198*, No. 98-400-JWD-RLB, 2020 WL 6074627, at *5 (M.D. La. Oct.

---

[4] Additionally, to the extent Rost makes this argument, the penalty assessments in issue are not adjudications subject to 5 U.S.C. § 554. Section 554 requires formal adjudication "when the governing statute specifies that an agency must conduct a 'hearing on the record.'" *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 759 (S.D. Tex. 2007). That is not the case here, as an assessment by the IRS of a tax or penalty is "essentially a bookkeeping notation." *Hibbs v. Winn*, 542 U.S. 88, 100 (2004); *Capozzi v. United States*, 980 F.2d 872, 874 (2d. Cir. 1992).

15, 2020) (citing *U.S. v. Reagan*, 596 F.3d 251, 254-55 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation . . . is a failure to brief and constitutes waiver")). Accordingly, the Court finds Rost has waived her excessive fines argument.

### 7. Duty of Clarity

Rost finally argues that the penalties in issue violate the "duty of clarity." *See Central Illinois Public Service Co. v. United States*, 435 U.S. 21 (1978). She asserts that, "the imposition of a penalty by a government agency without a clear rule explaining in what circumstances the penalty will be imposed violates the duty of clarity for tax laws." (Pl.'s Mot., Dkt. 37, at 12). Specifically, Rost asserts that United States' failure to specify the foreign entities that might qualify as "foreign trusts" for United States tax penalty purposes, including the Liechtenstein *Stiftung*, is not sufficiently clear to satisfy the duty. Rost's argument is based on the presumption that the IRS automatically considers a *Stiftung* to be a foreign trust for tax and penalty purposes. She argues that imposition of penalties under § 6677 without a clear description of the prohibited circumstances, facts, or status, violates the duty of clarity, citing *Central Illinois*, 435 U.S. at 29. The United States responds that the "duty of clarity" applies only in the context of a third party collecting and paying taxes on behalf of another, such as through wage withholdings, and not in the context of a penalty case.

*Central Illinois*, which Rost cites, involved an employer who reimbursed employees for lunch expenses while day-traveling on business. *Id*. The Supreme Court found that an employer's "obligation to withhold [must] be precise and not speculative" and, because there was no IRS ruling requiring such withholding, it was unreasonable to require employers to do so. *Id*. at 29, 31–32, 98 S.Ct. 917. Similarly, a Claims Court agreed with an employer who argued that it had no "clear and precise" notice of its duty to withhold taxes from per diem allowances paid to workers, because there was no regulation to that effect. *General Elevator Corp. v. United States*, 20 Cl. Ct. 345, 347, 352–53 (Cl. Ct. 1990).

The Court finds the logic of these cases inapplicable to the instant matter. Here, clear statutes and regulations define a trust, a "foreign trust" and the reporting requirements on a "foreign trust." To the extent a "duty of clarity" exists, the Court finds that the statutory and regulatory framework relied upon by the IRS in applying penalties to Rebold are sufficiently clear. Therefore, the United States is entitled to summary judgment on this issue.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiff Daphne Jeanette Rost, Executor of the Estate of John H. Rebold, Deceased's, Motion for Summary Judgment, (Pl.'s Mot. Summ. J., Dkt. 37), is **DENIED. IT IS FURTHER ORDERED** the United States' Motion for Summary Judgment, (Def.'s Mot. Summ. J., Dkt. 38), is **GRANTED** and this cause of action is **DISMISSED**. **IT IS FINALLY ORDERED** that the referral of these motions to Judge Howell is **VACATED.** Any relief not specifically granted is **HEREBY DENIED**.

**SIGNED** on September 22, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE